UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-81397-CV-HURLEY/HOPKINS

THE YACHT CLUB ON THE
INTRACOASTAL CONDOMINIUM
ASSOCIATION, INC.,

    Plaintiff,

v.

LEXINGTON INSURANCE
COMPANY, et al.,

    Defendants.
_____/

## ORDER DISMISSING CASE WITHOUT PREJUDICE

**THIS CAUSE** is before the Court upon Lexington Insurance Company's Motion for Summary Judgment [DE # 28], James River Insurance Company's Motion for Summary Judgment [DE # 34], and Plaintiff's Motion to Strike [DE # 75]. Responses and replies have been filed [DE # 57, 70, 73] to the motions for summary judgment. Because the Court concludes that at the time Plaintiff filed suit the case was not ripe for adjudication, the Court will dismiss the case without prejudice.

### I. BACKGROUND

This action arises out of insurance contracts between the Plaintiff, The Yacht Club on the Intracoastal Condominium Association, Inc. ("Yacht Club"), and the James River Insurance Company ("James River") and Lexington Insurance Company ("Lexington"). Lexington provided primary coverage, while James River provided excess coverage. Plaintiff seeks compensation under the policies for damage that occurred on October 24, 2005 when Hurricane Wilma made landfall in

Florida.

Plaintiff first alerted Lexington to the claim on May 21, 2010, approximately four years and seven months after the damage occurred, when its counsel sent a letter of representation to Lexington and requested certain policy information. Then on July 27, 2010, Plaintiff provided Lexington with formal notice of the loss. On October 1 and 14 of 2010, Lexington requested a proof of loss, examination under oath, and various other documentation pursuant to provisions in the Lexington policy under the section entitled "Duties In The Event Of Loss Or Damage." Def. Lexington's Mot. Summ. J., Exs. C, D [DE # 28-3, 28-4]. *Inter alia*, that section requires the insured to "[g]ive [Lexington] prompt notice of the loss or damage," "[i]f requested, permit [Lexington] to question [the insured] under oath," and to "[s]end [Lexington] a signed, sworn statement of loss containing the information [Lexington] request[s] to investigate the claim." Notice of Removal, Ex. B, at 47-48 [DE # 1-4]. The Lexington policy also contains the following provision: "No one may bring a legal action against us under this Coverage Part unless . . . [t]here has been full compliance with all of the terms of this Coverage Part." Notice of Removal, Ex. B, at 47-48 [DE # 1-4]. Plaintiff filed suit against Lexington on October 12, 2010. The parties do not dispute that Plaintiff did not provide a "signed, sworn statement of loss" (or "proof of loss") prior to filing suit, nor do they dispute that Plaintiff did submit a proof of loss on November 29, 2010. Pl.'s Statement of Add'l Facts, ¶ 19 [DE # 58]; Ex. 18 [DE # 58-19].[1] At the time Plaintiff filed suit, Lexington was still conducting its investigation of Plaintiff's claim and making requests for documents and other discovery-type activities pursuant to the Lexington policy, which requests it has since abandoned.

---

[1] The document is marked both as exhibit twelve and eighteen. The Court will refer to it as exhibit eighteen and note for clarity that it is the nineteenth attachment to the document bearing the electronic case filing number fifty-eight.

James River, meanwhile, first received notice of the claim on October 8, 2010[2] and was added as a party to the lawsuit against Lexington on October 22, 2010. The James River policy contains provisions similar to those in the Lexington policy regarding a proof of loss[3] and legal action against the insurer.[4] The prompt notice provision in the James River policy provides as follows:

> The insured or their authorized representative shall immediately report in writing to the Company or its authorized representative any loss, damage or occurrence that will, or is likely to result in a claim under this Policy. Failure to give notice of any such loss which at the time of occurrence did not appear to involve this policy, but which at a later date would appear to give rise to a claim hereunder, shall not invalidate such claim.

Like Lexington, James River was still conducting its investigation into the claim when it was named as a defendant.

In response to this Court's Order to Supplement the Record [DE # 77], the parties have submitted filings demonstrating that at no point prior to filing suit did either Lexington or James River make any specific denial of a claim by Plaintiff, if such a claim was ever presented. *See* Def. James River's Resp. to Ct.'s Order to Supplement R. [DE # 78]; Notice of Compliance [DE # 82].

## II. JURISDICTION

As courts of limited jurisdiction, "[f]ederal courts are expected to monitor their jurisdictional boundaries vigilantly." *America Fiber & Finishing, Inc. v. Tyco Healthcare Group, LP*, 362 F.3d

---

[2] It appears that a letter was sent to James River on September 8 but was not received until October 8 due to an incorrect address. Def.'s Notice of Filing, Oct. 5, 2011, Ex. 4 [DE 33-4].

[3] "The Insured shall complete and sign a sworn proof of loss within sixty (60) days after the occurrence of a loss . . . ." Notice of Removal, Ex. B, at 68 [DE # 1-4].

[4] "No one may bring a legal action against us under this Policy unless . . . [t]here has been full compliance with all of the terms of this Policy." Notice of Removal, Ex. B, at 63 [DE # 1-4].

136, 139 (1st Cir. 2004). For that reason, the Court is obligated to inquire into whether it has subject matter jurisdiction over this case, *see, e.g.*, *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 507 (2006), which includes an inquiry into the ripeness of the suit. *Bauknight v. Monroe County, Fla.*, 446 F.3d 1327, 1331 (11th Cir. 2006). The essential question is whether the issues presented are fit for judicial decision. *Nat'l Park Hospitality Ass'n v. Dept. of Interior*, 538 U.S. 803, 807 (2003). To the extent that a claim "rests upon '"contingent future events that may not occur as anticipated, or indeed may not occur at all,"'" it is not ripe for adjudication. *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agricultural Prods. Co.,* 473 U.S. 568, 580-81 (1985) (quoting 13A Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3532 (1984))). Importantly, ripeness is determined based on the facts as of the time the complaint was filed. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989) ("The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed."). It is also worth noting that "[e]ven when the constitutional minimum has been met . . . prudential considerations may still counsel judicial restraint." *Digital Properties, Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997).

As indicated above, Plaintiff initiated the instant action prior to any specific refusal of a claim by either Defendant. "Under Florida law, with respect to claims for breach of an insurance policy, a specific refusal to pay a claim is the breach which triggers the cause of action and begins the statute of limitations running." *Golden View Condominium, Inc. v. QBE Ins. Corp.*, No. 0:11-cv-60137-AJ (S.D. Fla. July 29, 2011) (internal quotations omitted). At the time Plaintiff filed suit, Lexington was in the process of investigating the claim and had made document requests pursuant to the post-loss duties described in the Lexington policy. James River, for its part, had only been notified of the

4

existence of the claim a mere four days before Plaintiff initiated the instant action and fourteen days before being added as a Defendant. In that fourteen-day span, James River was also in the process of investigating the claim. At oral arguments, counsel for James River noted the irony of being sued for breach of contract on a claim it had not even had an opportunity to investigate, much less deny.

Under these facts, the Court finds that Plaintiff's breach of contract claims against both Lexington and James River are not ripe for adjudication and must be dismissed without prejudice. In each breach of contract claim, Plaintiff asserts a continuing breach from the date Hurricane Wilma allegedly damaged its property to the present. Notice of Removal, Ex. B, ¶¶ 25, 34. These allegations are fallacious. There can be no breach of the instant policies for failure to pay before a claim has been made. Neither Defendant breached the policy merely by not offering a payment the moment damage occurred, as the Complaint seems to suggest. Rather, Plaintiff would have a ripe claim for breach of contract if, after conducting their investigations, either or both insurers denied Plaintiff's claims in a way Plaintiff believed violated the contract. At the time Plaintiff commenced this action, such a denial was a "contingent future event[] that may not occur as anticipated, or indeed may not occur at all." *Texas*, 523 U.S. at 300 (internal citations omitted). *See also Golden View*, No. 0:11-cv-60137-AJ (S.D. Fla. July 29, 2011).

Plaintiff also included a declaratory judgment count against Lexington in its complaint. While it is true that the innovation of declaratory judgments blurs some of the lines drawn by the doctrines of standing and ripeness, *see, e.g.*, 22A Am. Jur. 2d *Declaratory Judgments* § 32, even in declaratory judgment actions, a court "cannot sit in review of a speculative breach of contract." *Moynihan v. West Coast Life Ins., Co.*, 607 F. Supp. 2d 1336, 1337 (S.D. Fla. 2009). Even if the constitutional minimum is met for a declaratory judgment, prudential considerations of judicial

efficiency counsel against the ripeness of the instant cause of action. As in *Moynihan*, the instant policies contain provisions designed to ensure the insurers sufficient time to investigate claims prior to litigation. 607 F. Supp. 2d at 1338-39. Not only would the Court's ruling on whether a breach has occurred interfere with Defendants' ability to investigate the potential claims, but the Court's own analysis of the merits of Plaintiff's claim would benefit from a full record of these investigations.

In evaluating ripeness, the Court must also consider the potential hardship to the parties if the Court withholds judgment until a more ideal time. *Digital Properties*, 121 F.3d at 590. While Plaintiff has alluded to its concern that the statute of limitation would have run had it not initiated the lawsuit when it did, Pl.'s Resp. Opp. Mots. Summ. J. at 14, because neither Defendant actually denied any claim, the statute of limitation should pose not hardship to Plaintiff pursuing its claim if and when it becomes ripe. *See Golden View*, No. 0:11-cv-60137-AJ (S.D. Fla. July 29, 2011) ("[I]t is well-established under Florida law that a breach of contract claim regarding an insurance policy does not begin to accrue until there has been a 'specific refusal to play [sic] a claim.'" (quoting *Allstate Ins. Co. v. Kaklamanos*, 843 So. 2d 855, 892 (Fla. 2003)).

### III. CONCLUSION

In light of the foregoing, the Court finds that the case is unripe for adjudication because the breach that forms the basis of Plaintiff's claim has not actually occurred and, at the time Plaintiff commenced this action, was speculative. The Court also finds that prudential concerns militate against adjudication at this time given that the investigation by the insurers contemplated under the policies was cut off when Plaintiff filed suit. Finally, the Court does not perceive any hardship to the parties that would countervail the foregoing analysis.

6

Order Dismissing Case Without Prejudice
The Yacht Club on the Intracoastal Condominium Ass'n, Inc. v. Lexington Ins. Co.
Case No. 10-81397-CV-HURLEY/HOPKINS

Because the matter is unripe, the Court does not have subject matter jurisdiction over the case and cannot consider further action. Therefore, it is hereby **ORDERED** and **ADJUDGED** that:

1. Plaintiff's Amended Complaint is **DISMISSED WITHOUT PREJUDICE**.

2. All pending motions are **DENIED AS MOOT**.

3. The Clerk of Court is directed to mark this case as **CLOSED**.

**DONE** and **SIGNED** in Chambers at West Palm Beach, Florida, this 2nd day of November, 2011.

Daniel T. K. Hurley
United States District Judge

*Copies provided to counsel of record*