UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA\

CASE NO. 10-81397-CV-HURLEY/HOPKINS

THE YACHT CLUB ON THE
INTRACOSTAL CONDOMINIUM
ASSOCIATION, INC.,

    Plaintiff,

v.

LEXINGTON INSURANCE
COMPANY, et al.,

    Defendants.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendant Lexington Insurance Company's Motion for Summary Judgment [ECF No. 28]. The Court previously denied the motion as moot. Order Dismissing Case Without Prejudice [ECF No. 91]. On appeal, the Eleventh Circuit remanded the case to this Court to rule on the merits of the motion. *See* Mandate 9 [ECF No. 107]. The motion has been fully briefed, and the Court has held oral arguments. For the reasons to follow, the Court will grant Defendant's motion.

## BACKGROUND

This action arises out of an insurance contract between the Plaintiff, The Yacht Club on the Intracoastal Condominium Association, Inc. ("Yacht Club"), and Lexington Insurance Company ("Lexington"). The Yacht Club is a condominium association comprised of sixteen residential buildings with 380 units, an office-and-clubhouse building, a maintenance building, six garages, and

nine carports. Plaintiff seeks compensation for alleged hurricane damage cause by Hurricane Wilma on October 24, 2005.

Plaintiff's Board of Directors was aware of "obvious damage" to the buildings following Hurricane Wilma. Decl. of James Capodanno ¶ 5 [ECF No. 58-22]. However, the Board contends it did not realize the alleged severity of the damage, nor did it believe the damage would exceed the Lexington policy's deductible. Pl.'s Statement of Material Facts ("Pl.'s Statement") ¶¶ 28-30 [ECF No. 58]. Yet, over the ensuring years, the Board was aware of various problems—e.g., "worsening condition of roof tiles . . .; distress to exterior portions of the buildings including stucco around window sills; the need for continual repairs to the roofs . . .; increasing interior leaks; troublesome and malfunctioning windows and sliding glass doors . . .; numerous cracks on drywall; [and] . . . wind noise and drafts coming through the windows and sliding glass doors . . . ." In 2009, Plaintiff retained professionals to analyze the root cause of these problems. *Id.* ¶¶ 31-33. In the latter part of 2009, Plaintiff concluded that the damage was attributable to Hurricane Wilma and that it was severe enough to justify a claim under the Lexington Policy. *Id.* ¶ 33.

Plaintiff first alerted Lexington of its potential claim on May 21, 2010—approximately four years and seven months after Hurricane Wilma—when Plaintiff's counsel sent a letter of representation to Lexington and requested policy information. Then on July 27, 2010, Plaintiff provided Lexington with a *notice* of the loss. Lexington responded on October 1 and 14 of 2010, by requesting a *proof* of loss, examination under oath, and various other documentation pursuant to provisions in the Lexington policy under the section entitled "Duties In The Event Of Loss Or damage." Motion, Exs. C, D [ECF No. 28-3, 28-4]. Plaintiff filed this lawsuit on October 12, 2010

in the Florida circuit court for Palm Beach County, and Lexington timely removed to this Court.

## JURISDICTION

This Court has original jurisdiction over this action based on diversity of citizenship under 28 U.S.C. § 1332. Venue is proper in this Court because the underlying events took place in the Southern District of Florida and because the state-court action was filed in the Fifteenth Judicial Circuit of Florida in and for Palm Beach County.

## DISCUSSION

### A.

Summary judgment is warranted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of meeting this exacting standard. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In determining whether summary judgment is appropriate, facts and inferences from the record are viewed in the light most favorable to the non-moving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. *See Matsuhita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

The non-moving party, however, bears the burden of coming forward with evidence of each essential element of his claims such that a reasonable jury could return a verdict in his favor. *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002). In response to a properly supported

3

motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the non-movant's position is insufficient; there must be evidence on the basis of which a jury could reasonably find for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A complete failure of proof concerning an essential element of the non-movant's case necessarily renders all other facts immaterial and entitles the moving party to summary judgment. *See Celotex*, 477 U.S. at 323; *Gonzalez v. Lee Cnty. Housing Auth.*, 161 F.3d 1290, 1294 (11th Cir. 1998).

**B.**

*1.     Proof of Loss*

The undisputed facts in record establish that Plaintiff filed this suit *before* it provided a proof of loss to Lexington. Motion, Exs. C, D [ECF No. 28-3, 28-4]; Response 4 [ECF No. 57]. Lexington contends this is a fatal error that bars the present suit. Generally, when compliance with a request to submit a proof of loss is made a condition precedent in an insurance policy, failure to do so will bar a claim even without a showing of prejudice to the insurer. *See, e.g.*, *Swaebe v. Fed. Ins. Co.*, 374 F App'x 855, 857 (11th Cir. 2010); *Ro-Ro Enters., Inc. v. State Farm Fire & Casualty Co.*, No. 93-1754-CIV, 1994 WL 16782171, at *3 (S.D. Fla. June 22, 1994). However, whether submission of a proof of loss is a condition precedent to a lawsuit turns on the specific language of a policy.

In the instant case, the Lexington policy requires, among other things, that the insured

"[g]ive [Lexington] prompt notice of the loss or damage," "[i]f requested, permit [Lexington] to question [the insured] under oath," and "[s]end [Lexington] a signed, sworn statement of loss containing the information [Lexington] request[s] to investigate the claim." Notice of Removal, Ex. B, at 47-48 [ECF No. 1-4]. The policy also includes a proof-of-loss provision that requires the insured to provide a sworn statement of loss "within sixty (60) days after [Lexington's] request." *Id.* The Lexington policy makes compliance with these provisions a condition precedent to suit with the following provision: "No one may bring a legal action against us under this Coverage Part unless . . . [t]here has been full compliance with all of the terms of this Coverage Part." Notice of Removal, Ex. B, at 47-48 [ECF No. 1-4].

Thus, unlike the policies in the cases Lexington cites, the Lexington policy does not make the submission of a proof of loss a condition precedent to suit. Rather, an insured is only required to submit a proof of loss within sixty days of Lexington's request, and an insured may not sue on the policy if it is not in compliance with that requirement. Lexington has argued at length that Plaintiff did not submit a proof of loss prior to filing this action, but the deadline by which Plaintiff was required to submit a proof of loss was set by the date of Lexington's request, i.e., October 1, 2010, not the filing date of Plaintiff's suit. Lexington does not provide any evidence that Plaintiff failed to submit a proof of loss within sixty days of its request, and at the time Plaintiff filed suit, it still had time to submit a proof of loss in full compliance with the policy.[1]

---

[1] Lexington requested a sworn proof of loss on October 1 and 14, 2010, Motion 9 [ECF No. 28], and Plaintiff filed suit on October 12, 2010.

5

On this basis, the cases Lexington cites are readily distinguishable because either (a) the policies at issue explicitly required the submission of a proof of loss before initiating suit, *see, e.g.*, *Swaebe*, 374 F. App'x at 857 (noting that the insurance policy at issue "required [the insured] to submit a proof of loss 30 days prior to suit"), or (b) the policies at issue contained a deadline to submit a proof of loss that had actually lapsed. *See, e.g.*, *Starling v. Allstate Floridian Ins. Co.*, 956 So. 2d 511, 513-14 (Fla. 5th DCA 2007) (finding that the insured was informed on August 31, 2001 that she had sixty days to provide a proof of loss but did not do so until June 2002, three months after filing suit); *Ro-Ro*, 1994 WL 16782171, at *1 (finding that the insured failed to provide a sworn proof of loss despite numerous requests). The instant case presents neither of those scenarios. Lexington has not pointed to any provision in its policy that expressly requires the submission of a proof of loss prior to suit, nor has it shown that Plaintiff failed to comply with Lexington's request to provide a proof of loss within sixty days. To the contrary, the record indicates that Plaintiff submitted a proof of loss just prior to the lapse of the sixty-day deadline. Pl.'s Statement ¶ 19 [ECF No. 58]. Because of this and in light of the disfavor with which courts look upon conditions precedent, *see* 17A Am. Jur. 2d *Contracts* § 460, the Court cannot truncate the sixty-day deadline and create a shorter time period than that specified in the contract.

2.   *Prompt Notice*

(a)   Notice Was Not Prompt as a Matter of Law

Having determined that Plaintiff did not breach a condition precedent by filing suit prior to submitting a proof of loss, the Court turns to the provision of the policy requiring prompt notice. Specifically, the policy states, "You must see that the following are done in the event of loss or

damage to Covered Property: . . . Give us prompt notice of the loss or damage." Notice of Removal, Ex. B, at 47-48 [ECF No. 1-4]. Under Florida law, failure to give prompt notice in violation of an insurance policy will justify a denial of recovery. *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1333, 1338 (S.D. Fal. 2009); *Bray & Gillespie IX, LLC v. Hartford Fire Ins. Co.*, No. 6:07-cv-326-Orl-DAB, 2009 WL 1513400, at *6 (M.D. Fla. May 27 2009). "If the insured breaches [a] notice provision, prejudice to the insurer will be presumed, but may be rebutted by a showing that the insurer has not been prejudiced by the lack of notice." *Bankers Ins. Co. v. Macias*, 475 So. 2d 1216, 1217-18 (Fla. 1985).

Generally, the determination of what constitutes "prompt notice" is a factual question which turns on the facts and circumstances of each case. *Vision I*, 674 F. Supp. 2d at 1338. Furthermore, failure to provide prompt notice will only bar recovery when the failure is prejudicial to the insurer. The failure to provide prompt notice, however, creates a rebuttable presumption of prejudice. *Id.*

The alleged damage in this case occurred when Hurricane Wilma reached Florida on October 24, 2005. Plaintiff first provided Lexington with notice of its claim on May 21, 2010, nearly four years and seven months after the occurrence. Nonetheless, Plaintiff contends this notice was prompt because it was unaware of the extent of the damage until 2009. Pl.'s Statement ¶ 29 [ECF No. 58]. Only in the latter part of 2009, after residents complained about worsening conditions over a period of years, did Plaintiff finally undertake the professional analysis required to reveal the "significant damage" allegedly attributable to Hurricane Wilma. *Id.* at ¶¶ 32-33. Plaintiff insists that in light of its uncertainty regarding the extent of damage, the nearly fifty-five month delay in providing notice was reasonable.

7

Undisputed facts in the record, however, undermine Plaintiff's contention. For example, Plaintiff knew of "some obvious damage" immediately following Hurricane Wilma in 2005. Decl. of James Capodanno ¶ 5 [ECF No. 58-22]. In order to give prompt notice, an insured is obligated to notify the insurer of the potential for a claim when some damage is obvious even if its full extent is unknown. *1500 Coral Towers Condo. Ass'n, Inc. v. Citizens Property Ins. Corp.*, ___ So. 3d ____, No. 3D12-132, 2013 WL 1316416, at *2 (Fla. 3d DCA, April 3, 2013) ("When an insurance contract contains a provision which applies to notice of the damage claim, an insured must give notice of the loss that implicates a potential claim without waiting for the full extent of the damages to become apparent."); *see also Kendall Lakes Towers Condo. Ass'n v. Pacific Ins. Co.*, No. 10-24310-CIV, 2012 WL 266438, at *4 (S.D. Fla. Jan. 30, 2012) ("The insurance contract required that ["the insured"] give notice of loss or damage, without regard for whether it intended to submit a claim or whether it determined that the loss was covered under the policy."). Moreover, "an insured's good faith belief that the damage is trivial or is not covered by the policy is insufficient to justify non-compliance with [a] policy's notice provision." *Kendall Lakes*, 2012 WL 266438, at *4.

The unreasonableness of the delay in the instant case is made all the more clear by the fact that Plaintiff had previously engaged in litigation regarding the condition of its facilities' roofs and would, on that basis, have had cause to investigate damage caused by Hurricane Wilma. Capodanno Dep. 120-22, 127-46, 153-58 [ECF No. 63-1]. Plaintiff had also hired contractors to perform significant repairs on its roofs. *Id.* In light of these facts, the Court concludes that notice four-and-a-half years after the occurrence was not prompt as a matter of law. *See Kroener v. Fla. Ins. Guar. Ass'n*, 63 So. 3d 914, 916 (Fla. 4th DCA 2011) (finding a twenty-six month delay not prompt as a

8

matter of law).

### (b)   Plaintiff Has Not Rebutted the Presumption of Prejudice

Next, the Court must determine whether Plaintiff's failure to provide prompt notice prejudiced Lexington—or, more accurately, whether Plaintiff has rebutted the presumption of prejudice arising from its failure to provide prompt notice. *See Kramer v. State Farm Fla. Ins. Co.*, 95 So. 3d 303, 305 (Fla. 4th DCA 2012). This presumption reflects the reality that a more proximate analysis of damage allows experts to draw not only more accurate conclusions regarding the cause and extent of the damage, but also conclusions that will be better understood and credited by a finder of fact. In addition to the quality of the investigations, prompt notice also allows an insurer to monitor repairs and ensure that damage is not exacerbated over a period of delay.

In its attempt rebut the presumption, Plaintiff has relied primarily upon three arguments. First, Plaintiff points to the conclusions drawn by the insurer's experts and argues that their ability to reach some conclusions despite the delay belies the notion that the insurers have suffered any prejudice:

> [D]efendants [sic] engineering experts had no difficulty during their several investigations in determining that Hurricane Wilma did not cause the damage to the windows and doors at the Yacht Club. Defendants [sic] four trial experts have opined as such, and none complained that the passage of time since the loss prevented them from reaching their conclusions.

Response 10 [ECF No. 57]. Plaintiff's reasoning fails because the ability to draw *some* conclusions despite the passage of time does not negate the fact that better and more reliable conclusions could have been drawn from an earlier inspection.

9

Second, Plaintiff points out the absence of any internal standard, protocol, or guidance adopted by Lexington that states that an expert's opinion is "less valuable when that opinion is rendered five years after a given loss." *Id.* Lexington does not need to codify the notion that a prompt inspection will yield better results than a delayed one in order for that notion to be true. Aside from which, the fact that Lexington requires prompt notice in the policy demonstrates that it does indeed place a high value on the ability to conduct investigations reasonably near in time to the events causing loss.

Finally, Plaintiff relies on its own engineering expert's testimony. The expert's evaluation consisted of visual inspection of 102 of the 380 total units and the roofs of the buildings over a span of six days. Decl. of Anurag Jain ¶ 5-6 [ECF No. 58-23]. The expert states,

> I have performed investigations numerous times on similar properties to determine damage induced by a variety of causes after signification [sic] passage of time, and, in rare instances, even when the structure is no longer in existence such as the investigation we conducted following the collapse of the twin towers of the World Trade Center in New York City, we were able to conduct a thorough evaluation and render our opinions.

*Id.* at ¶ 8. The expert goes on to conclude "within a reasonable degree of engineering certainty" that particular damage was "directly caused or exacerbated by Hurricane Wilma." *Id.* at ¶ 14. But again, this testimony only indicates that certain conclusions can be drawn despite the passage of time. Nothing in the expert's report rebuts the presumption that *better* and more accurate conclusions—conclusions that would be more persuasive to a fact finder—would have been drawn had Plaintiff fulfilled its contractual obligation and notified Lexington of its claims sooner or even that the same conclusions might have been drawn more easily or at a lower cost. Moreover, nothing

in the expert's report accounts for the post-Wilma repairs that were done on the roof or the possibility that those repairs were faulty. *See Kendall Lakes*, 2012 WL 266438, at *6 ("[I]t cannot seriously be disputed that the late notice prevented [the insurer] from investigating the claim immediately following Hurricane Wilma, when it would have been in the best position to determine the cause and extent of the damage. . . . Additionally, because [the insured] made repairs without first notifying [the insurer, the insurer] was unable to monitor or to cooperate with those repairs and to determine what efforts [the insured] undertook to mitigate its damages."). In fact, the expert observes that

> [u]n-repaired damage to the structures, doors, windows and roofing would make the building more susceptible to further damage from future rain and wind storms. It is a recognized fact that damaged or weakened doors and windows are more susceptible to further damage during lower intensity wind storms thereby allowing more wind to enter into a building, typically resulting in higher wind loads.

Decl. of Anurag Jain ¶ 11 [ECF No. 58-23]. Thus, the expert's report recognizes that delays in reporting and repairing damage caused by Wilma can lead to further damage even from non-hurricane events. While the expert suggests that damages could be traced to Hurricane Wilma, he does not discuss evaluating the extent of the damage just after Hurricane Wilma and how that damage may have progressed over a period of nearly five years. For these reasons, the Court finds that, while the expert's report rebuts the presumption of prejudice insofar as it is evidence that certain conclusions could still be drawn about the alleged loss despite the passage of time, the expert's report does not address (a) whether better conclusions could have been drawn without the delay, (b) whether those conclusions could have been drawn more easily, or (c) whether the repairs to the affected areas that took place in the interim would complicate an evaluation of the extent of

11

Order Granting Defendant's Motion for Summary Judgment
The Yacht Club on the Intracoastal Condominium Association, Inc. v. Lexington Insurance Co.
Case No. 10-cv-81397-DTKH

the damage or Plaintiff's efforts to mitigate its damages.

## CONCLUSION

In light of the foregoing, the Court finds that there is no genuinely disputed material fact to preclude findings that (a) Plaintiff failed to give Lexington prompt notice of the loss that is the basis of its claims and (b) that Plaintiff has failed to rebut the presumption of prejudice arising from this failure. Accordingly, the Court will grant Defendant's motion for summary judgment.

It is hereby **ORDERED** and **ADJUDGED** that:

1. Lexington Insurance Company's Motion for Summary Judgment [ECF No. 28] is **GRANTED**.

2. Pursuant to Federal Rule of Civil Procedure 58(a), the Court will enter final judgment by separate order.

**DONE** and **SIGNED** in Chambers at West Palm Beach, Florida, this 10th day of May, 2013.

Daniel T. K. Hurley
United States District Judge

*Copies provided to counsel of record*